IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GIORDANIO A. BLACKBURN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.  4:17-cv-02182-AGF |
| | ) | |
| CINDY GRIFFITH, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner

Giordanio Blackburn for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is an inmate in the Potosi Correctional Center.[1]  Petitioner was convicted of

first-degree murder, kidnapping, child kidnapping, and three counts of armed criminal

action in connection with the shooting death of Mr. Al-Regis Clay in January 2009.

Petitioner was sentenced to life in prison without parole for first-degree murder, 15 years

for kidnapping, and life sentences on the remaining counts, all to run concurrently.  In his

federal habeas petition, Petitioner asserts three claims of trial court error and ineffective

assistance of counsel.  For the reasons set forth below, habeas relief will be denied.

---

[1]      Cindy Griffith was the Warden at the Potosi Correctional Center when Petitioner
filed the present petition.  She has since been succeeded by Mr. Stan Payne, whom
Petitioner names as the proper respondent as of the date of Petitioner's traverse.  ECF No.
19 at FN 1.

# BACKGROUND

A jury trial took place from July 18 to 20, 2011. The evidence at trial showed the

following, as summarized by the Missouri Court of Appeals in Petitioner's direct appeal:

> On January 20, 2009, J.W., her boyfriend, A.- R.C., and her three-year-old
> child, T.G., were living in an apartment in St. Louis County. At about 10:30
> that night J.W., T.G., and A.-R.C. were in the bedroom. A.- R.C. left the
> bedroom, and J.W. heard stumbling on the steps and glass falling. A.-R.C.
> returned to the bedroom with blood on his shirt and attempted to make a
> phone call.  Defendant then came into the bedroom with a gun in his hand
> and shot A.-R.C. three times in front of J.W. and T.G., killing A.-R.C.
> Defendant, with the gun in his hand, told J.W. to "come the fuck on."
> Defendant picked T.G. up and left the home through the back door, which
> had been shot out.  J.W. said she wanted to stay, but went with Defendant
> because he had a gun. She was wearing only a bra and scrub pants. Defendant
> again told J.W. to "come on," and she followed him to a van. Two men
> occupied the driver's seat and front passenger seat. Defendant, who still had
> the gun and T.G., got in the rear driver's-side seat with T.G., and J.W. got in
> the rear passenger-side seat. While the van proceeded to a house, Defendant
> told J.W. to look him in the eyes and say that she would not say anything
> about the shooting. After stopping at the first house, they went to another
> house, where J.W. and Defendant went to an upstairs room and Defendant
> again warned J.W. not to say anything about the shooting. They remained in
> the room 45 minutes and Defendant told J.W. to change her pants because
> there was blood on her pants leg. Defendant, the original driver, the original
> front seat passenger, J.W., T.G., and others then left the house in the van, and
> J.W. and T.G. were dropped off at J.W.'s mother's house. Upon seeing J.W.
> get out of the van, J.W.'s mother ran outside, saying that A.-R.C. had been
> shot. J.W. told her to "shut up" and get back in the house because Defendant
> was in the van and she did not want him "to do no harm to us." J.W. was
> crying and then started vomiting. When the police arrived, they described
> J.W. as "scared to death" and too afraid to reveal the names of Defendant and
> the others. She did not identify Defendant and the others until she was at the
> police station and after the police informed her that A.-R.C. was dead.

ECF No. 12-5 at pp. 2-3.  *State v. Blackburn*, 383 S.W.3d 490 (Mo. App. E.D. 2012).[2]

---

[2]     The Court of Appeals issued a per curiam order summarily affirming the
judgment, along with an unpublished memorandum setting forth the facts and analysis
restated herein, pursuant to Mo. Sup. Ct. Rule 30.25(b).

One of the other men involved in the crime, Terrance Washington, pleaded guilty for his involvement in the murder and testified against Petitioner in the underlying criminal trial as part of his plea deal.  ECF No. 12-1 at pp. 407-497.  Because there was no physical evidence placing Petitioner at the scene of the crime, the State relied heavily on the testimony of J.W. and Washington to establish Petitioner's guilt.

Central to Petitioner's theory of defense, his trial counsel emphasized the lack of physical evidence confirming Petitioner as the shooter.  In particular, there was no blood spatter on any of Petitioner's clothing, though he was alleged to have shot Clay at close range.  Counsel suggested that J.W. misidentified Petitioner because she was "scared out of her mind."  ECF No. 12-1 at 169-170.  Counsel further argued that Washington was not a credible witness because he had previously lied under oath and had taken a plea deal in exchange for his testimony against Petitioner.  ECF No. 12-1 at 484-485. Petitioner also testified on his own behalf and asserted that, though he and several acquaintances drove to Clay's house on the night in question, Petitioner stayed in the van and had no part in crimes.  ECF No 12-1 at pp. 504-580.

**Closing Argument**

During closing arguments, Petitioner's counsel theorized that the lack of blood or DNA on Petitioner's clothing, in contrast to the large amount of blood spatter around the victim's bedroom, meant that Petitioner could not have been present when Clay was fatally shot at close range.

> Unless you can figure out a way to dry everything out and still be wearing
> it and somehow the DNA evidence disappears, and somehow all of these
> things are being worn at the time and the blood is being splattered, and

> you're standing at pointblank range, you can't convict him. The physical
> evidence won't allow it. The absence of physical evidence won't allow it.

ECF No. 12-1 at pp. 611.  In rebuttal, the prosecutor countered that DNA evidence was

not necessary for the State to carry its burden and, in any event, the absence of blood on

J.W. was not significant because no blood had been found on the child's clothing either.

> Ladies and gentlemen, this is important, this is very important. If you don't
> follow the evidence in this case, and you don't follow the law in this case,
> and you require the state to produce DNA evidence, then you have not
> followed the instructions and law here. I want you to think about this. Who
> else was in that room when [Clay] got shot? Who else was in there? [J.W.]
> and she says [Petitioner]. Who else? [T.G.] Where was [T.G.]? Foot of the
> bed. No evidence testimony [T.G.] had blood on him, zero.

ECF No. 12-1 at pp. 618-619.  Defense counsel objected, arguing that the prosecution

was improperly shifting the burden of proof onto Petitioner to explain the lack of DNA

evidence, when the police made no attempt to collect evidence from the child's clothing.

ECF No. 12-1. at p. 619-620.  The trial court sustained the objection, and the prosecutor

continued:

> There was no evidence anybody else in that room had blood on them.  No
> evidence at all.  [J.W.] had blood on her.  And no evidence other than Al-
> Regis had blood on him.  Four people in the room, [J.W.] and Al-Regis had
> blood on them.  That kills their theory, and they know that.

ECF No. 12-1 at p. 621.  Petitioner's counsel did not object to this argument.

As the theory of defense addressing J.W.'s testimony identifying Petitioner as the

shooter, defense counsel argued that it was a case of "misidentification by a woman who

is scared out of her mind."  ECF No. 12-1 at p. 169-170.  On cross-examination of J.W.,

counsel attempted to establish that J.W. implicated Petitioner as the shooter because she

knew Washington longer.  ECF No. 12-1 at p. 229.   In closing argument, the prosecutor

argued, "The defense seems to be either she's mistaken – remember that? … But as the case went on, it seems to be they are calling her a liar."  ECF No. 12-1 at p. 598.  In rebuttal, defense counsel clarified that J.W. was not *mistaken* but rather "scared out of her mind" and more afraid of Washington than of Petitioner," (ECF No. 12-1 at p. 599), implying that she deliberately *misidentified* Petitioner.

As stated above, the jury found Petitioner guilty of murder in the first degree, kidnapping, child kidnapping, and three counts of armed criminal action.  The trial court sentenced Petitioner to life in prison without parole on the murder conviction, 15 years for kidnapping, and life sentences on the remaining counts, all to be served concurrently.

### Direct Appeal

On direct appeal, Petitioner, through appointed counsel, argued that the trial court erred in entering judgment as to the kidnapping of J.W. and the related charge of armed criminal action because there was insufficient evidence to establish that Petitioner forcibly removed J.W. from her residence by forcible compulsion and without her consent for the purpose of terrorizing her, as the verdict director required.  ECF No. 12-2 at p. 15 (citing Mo. Rev. Stat. § 565.110); ECF No. 12-4 at p. 40.

The appellate court affirmed the judgment, reasoning that actual force is not a necessary element of kidnapping; rather, it is sufficient for the victim to submit out of a fear of force.  ECF No. 12-5, p. 4 (citing *State v. Blackmon*, 664 S.W. 2d 644, 648 (Mo. App. S.D. 1984).  The court noted that forcible compulsion is defined as "a threat, express or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping of such person or another person."  Mo. Rev. Stat. § 556.061.

Applying these concepts to the pertinent facts in the record – i.e., that Petitioner shot Clay at close range, took J.W.'s small child, and told her to "come the f*ck on" – the court concluded that the evidence was sufficient for the jury to infer an implied threat and non-consensual removal.  ECF No. 12-5 at p. 4-5.  As such, the appellate court found no error in the trial court's denial of Petitioner's motion for judgment of acquittal.

Petitioner did not seek rehearing or transfer to the Supreme Court of Missouri. ECF No. 2 at 2.

**State Post-Conviction Proceedings**

In February 2013, Petitioner filed a timely pro se motion for post-conviction relief, which was subsequently amended by appointed counsel.  ECF No. 12-6 at pp. 21-42.  In his amended motion, Petitioner claimed that trial counsel was ineffective for (1) failing to request a mistrial, or at least move to strike the prosecutor's closing argument, and (2) for failing to develop a consistent theory with respect to J.W.'s testimony. [3]   The trial court denied the motion without an evidentiary hearing (ECF No. 12-6 at pp. 55-63), and the

---

[3]     Appointed counsel filed the amended motion in June 2013.  The trial court denied that motion without an evidentiary hearing, and Petitioner appealed.  The appellate court reversed and remanded for an inquiry into whether Petitioner was abandoned by counsel given that the amended motion was untimely.  ECF No. 12-6 at p. 44; *Blackburn v. State*, 468 S.W.3d 910 (Mo. App. E.D. 2015).  On remand, the trial court found that Petitioner had been abandoned by counsel and thus allowed the amended motion to be filed out of time.  ECF No. 12-6 at p. 54.  The court then again denied the motion on the merits (ECF No. 12-6 at pp. 55-63), prompting Petitioner's second post-conviction appeal quoted herein.  The substantive claims in Petitioner's amended motion remained the same throughout these proceedings in state court.

appellate court affirmed that judgment.  ECF No. 12-9; *Blackburn v. State*, 502 S.W.3d 88 (Mo. App. E.D. 2016).[4]

On Petitioner's first claim, the appellate court found no basis for a finding of ineffectiveness because, as an initial matter, the trial court should not have sustained counsel's objection in the first place given that the State may argue inferences from the evidence or lack thereof.  ECF No. 12-9 at p. 8-9.  Logically, then, counsel was not ineffective for failing to request relief to which Petitioner was not entitled.  ECF No. 12-9 at p. 9.  Further, the court observed, the trial judge ruling on the post-conviction motion also presided over the criminal trial and stated that she would not have granted a mistrial or curative instruction even had counsel asked, so there was no reasonable probability that the outcome of the trial would have been different. ECF No. 12-9 at pp. 9-10.

The appellate court also rejected Petitioner's second post-conviction claim that counsel was ineffective for failing to develop a consistent theory of defense with respect to J.W.'s witness identification.  In reviewing the trial record, the court determined that defense counsel was *not* inconsistent in his theory regarding J.W.'s identification; rather, the prosecutor mischaracterized counsel's argument (as one of mistaken identification rather than intentional misidentification) to create an inconsistency, which defense counsel corrected on rebuttal.  ECF No. 12-9 at pp. 10-11.  Ultimately, the appellate court found no error in the trial court's findings that counsel demonstrated reasonable

---

[4]     The Court of Appeals issued a per curiam order summarily affirming the judgment, along with an unpublished memorandum setting forth the facts and analysis restated herein, pursuant to Mo. Sup. Ct. Rule 84.16(b).

competence and there was no reasonable probability of a different result had counsel argued differently.  ECF No. 12-9 at p. 11.

**Federal Habeas Petition**

Following the appellate court's affirmance, Petitioner filed his petition for writ of habeas corpus in this Court on July 28, 2017.  With one exception noted further below, Petitioner raises the same grounds for federal habeas relief as he raised in state court: (1) that the evidence was insufficient to support a conviction for kidnapping and its related charge of armed criminal action; (2) that trial counsel was ineffective for failing to request a mistrial or a curative instructive in response to the prosecutor's closing argument; and (3) that trial counsel was ineffective for failing to develop a consistent theory regarding J.W.'s testimony identifying Petitioner as the shooter.

Respondent maintains that the petition should be denied because the Missouri Court of Appeals properly decided these questions and its decisions are entitled to deference under 28 U.S.C. § 2254(d).

## DISCUSSION

**Legal Standard**

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to show ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687. When considering an attorney's performance, the court must indulge a strong presumption that the conduct was reasonable, and the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). In other words, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014). In order to show prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 753.

When addressing claims that were addressed by state courts, "[t]aken together, AEDPA and *Strickland* establish a doubly deferential standard of review." *Williams v.*

9

*Roper*, 695 F.3d 825, 831 (8th Cir. 2012).  It is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance."  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  *Id*. at 699.

### Kidnapping Conviction

As relevant here, the Missouri statute defines kidnapping as "remov[ing] another without his or her consent … for the purpose of … inflicting injury on or terrorizing the victim or another."  Mo. Rev. State §565.110.  The jury instruction further specified that J.W. was removed from her home "by means of forcible compulsion."  ECF No. 12-4 at p. 40.

For his first claim, Petitioner asserts that the evidence adduced at his criminal trial was insufficient to support a kidnapping conviction because he did not explicitly threaten J.W. when removing her from the residence.  ECF No. 1 at p. 16.  He suggests that J.W. consented to leaving her residence with him and the other men insofar as "[s]he followed [Petitioner] on her own."  ECF No. 19 at p. 4.  But, as the Missouri Court of Appeals observed, actual use of force is not a necessary element of kidnapping under Missouri law; rather, the victim can be prompted to submit out of fear.  ECF No. 12-5 at p. 4, citing *State v. Blackmon*, 664 S.W.2d 644, 648 (Mo. App. S.D. 1984).  Here, the evidence in the underlying trial record reflects that Petitioner fatally shot J.W.'s boyfriend (Clay) at close range, picked up her small child and headed out the back door while still holding the gun, and told her to "come the f*ck on."  J.W. and her son were placed in a van and

taken to two other locations before they were deposited at her mother's residence, where J.W. urged her mother into the house for fear that Petitioner would harm them. ECF No. 12-1 at pp. 203-216. One of the men explained that they killed Clay because he was a threat to them. ECF No. 12-1 at pp. 207. Petitioner repeatedly warned J.W. not to say anything about the shooting. ECF No. 12-1 at pp. 208-211.

Petitioner contends that the foregoing facts are insufficient to support a conviction and thus contrary to United States Supreme Court precedent stated in *Jackson v. Virginia*, 443 U.S. 307, 324 (holding that a petitioner is entitled to habeas relief when, on the record in evidence, no rational trier of fact could have found proof of guilt beyond a reasonable doubt). This Court disagrees and finds the facts in the record, as summarized above, sufficient to permit a rational juror to infer a lack of consent, an implied threat placing J.W. in fear for herself and her child, and an intent to terrorize J.W. into silence, and thus to find Petitioner guilty of kidnapping as defined by Missouri statute. Petitioner's habeas claim fails in this regard.

Additionally, however, in Petitioner's traverse (ECF No. 19), and for the first time, he argues that the kidnapping of J.W. was merely incidental to the kidnapping of her son and therefore should not stand on its own as a punishable offense. *See State v. Williams*, 860 S.W.2d 364, 366 (Mo. App. E.D. 1993) (instructing that kidnapping cannot stand as a separate offense "where the movement or confinement is merely incidental to another offense"). This argument was not raised at any time in state court proceedings (ECF No. 12-2, 12-6) and thus is procedurally defaulted. *Rebstock v. Russell*, 4:11CV1688 AGF, 2014 WL 1648887, at *2 (E.D. Mo. Apr. 24, 2014) (explaining that

11

the doctrine of procedural default precludes consideration of claims not presented to the state courts at any point).  Even had Petitioner properly preserved the issue for consideration here, this Court would find it lacking merit.  As Petitioner notes in his traverse (ECF No. 19 at p. 3), the analysis involves whether the defendant's movement or confinement of the victim increases the risk of harm to *that victim*.  Generally, this question arises when the elements of kidnapping coincide with other offenses against the same victim.  *See e.g., State v. Bess*, 73 S.W.3d 791 (Mo. App. E.D. 2002) (involving a sexual assault).  By contrast, this case involves two separate victims of kidnapping as the *primary* offense against *each* victim.  Petitioner's theory is unavailing on the present facts.

### Ineffectiveness of Counsel

Petitioner asserts two claims of ineffectiveness of counsel, previously raised in and rejected by the state courts.

<u>Closing Argument</u>

First, Petitioner asserts that counsel was ineffective for failing to request a mistrial or a curative jury instruction in response to the State's closing argument purporting to shift the burden onto Petitioner to prove why there was no blood on J.W. or her son.  The Missouri Court of Appeals opined that trial counsel's objection was unfounded in the first place because a prosecutor has wide latitude in closing arguments, and counsel's failure to request a mistrial or curative instruction would not have changed the outcome.  ECF No. 12-9 at pp. 8-10.

Petitioner asserts that the state courts failed to apply the correct standard of

review, contrary to *Darden v. Wainwright*, 477 U.S. 168 (1986).  But *Darden* does not support Petitioner's position.  There, the state and federal courts acknowledged the clear impropriety of the prosecutor's closing arguments (e.g., making offensive comments, referring to the defendant as an animal, and implying that the death penalty was the only guaranteed deterrent), but those courts still ultimately concluded that the petitioner was not deprived of a fair trial as a result.  *Id*. at 180-182.  Petitioner also cites *U.S. v. Simon*, 964 F.2d 1082 (11th Cir. 1992), for the general principle that prosecutors must refrain from making burden-shifting arguments requiring defendants to produce evidence or prove their innocence.  In *Simon*, the prosecutor repeatedly referenced the defendant's failure to produce a pistol for ballistics testing.  Though the Eleventh Circuit ultimately concluded there that any prejudice was cured by a jury instruction, the court recognized that such prosecutorial misconduct could require reversal when it is "so pronounced and persistent that is permeates the entire atmosphere of the trial."  *Id*. at 1086.

The present record does not compare to the substance or frequency of the comments at issue in *Darden* and *Simon*.  Petitioner points only to the following in closing argument:

> Ladies and gentlemen, this is important, this is very important. If you don't follow the evidence in this case, and you don't follow the law in this case, and you require the state to produce DNA evidence, then you have not followed the instructions and law here. I want you to think about this. Who else was in that room when [Clay] got shot? Who else was in there? [J.W.] and she says [Petitioner]. Who else? [T.G.] Where was [T.G.]? Foot of the bed. No evidence testimony [T.G.] had blood on him, zero.
>
> ***

13

> There was no evidence anybody else in that room had blood on them.  No
> evidence at all.  [J.W.] had blood on her.  And no evidence other than Al-
> Regis had blood on him.  Four people in the room, [J.W.] and Al-Regis had
> blood on them.  That kills their theory, and they know that.

In post-conviction proceedings, the state trial and appellate courts agreed that defense

counsel's objection should not have been sustained in the first place because the

prosecutor's argument fell within the bounds of permissible inferences.  ECF No. 12-9.

Mindful of the doubly deferential standard of review applicable to habeas cases, this

Court finds no basis to question the reasoning of the Missouri Court of Appeals.  On the

contrary, the Court agrees that the prosecutor's argument did not express or imply a

defendant's burden of proof but merely invited an inference from the evidence.  *See*

*Storey v. Roper*, 603 F.3d 507, 525 (8th Cir. 2010) (denying habeas relief where counsel

was not ineffective for failing to make a non-meritorious objection to closing argument).

Petitioner also asserts, without analysis, that the state court's decision violates

*California v. Trombetta*, 467 U.S. 479 (1984).  *Trombetta* involved whether the state's

failure to preserve possibly exculpatory evidence constituted a violation of due process.

While Petitioner appears to imply that counsel was ineffective for failing to frame the

issue in this manner, counsel *did* object to the State's argument regarding the absence of

DNA evidence as an attempt to shift the State's burden of proof.  The state courts did not

overlook this foundation of due process but simply concluded that the prosecutor's

argument was within bounds.

Petitioner provides no persuasive authority for his proposition that the state courts'

determinations contravene applicable federal precedent.  As such, Petitioner's claim of

ineffectiveness on this issue fails.

<u>J.W.'s witness identification</u>

Second, Petitioner claims that counsel was ineffective for failing to develop a consistent theory regarding J.W.'s eyewitness testimony implicating Petitioner as the shooter.  Specifically, Petitioner suggests that counsel vacillated between theories of mistaken identity and deliberate misidentification.  Petitioner further asserts that counsel failed to elicit testimony showing that J.W. had a motive to implicate Petitioner because she was close with his co-defendants.

The trial transcript belies Petitioner's characterization.  As the Missouri Court of Appeals observed, it was the prosecutor who misrepresented the record by stating in closing argument, "the defense seems to be either she's mistaken … but as the case went on they are calling her a liar."  ECF No. 12-9 at p. 10-11, citing ECF No. 12-1 at pp. 598. Defense counsel's theory of deliberate misidentification was consistent throughout the trial.  In opening argument, counsel stated twice that J.W. misidentified Petitioner because she was scared.  ECF No 12-1 at pp. 169-170.  On cross-examination, counsel established that J.W. knew Washington the longest of the three men involved.  ECF No. 12-1 at pp. 229.  Elsewhere, counsel sought to establish that J.W. was "not initially forthcoming" about identifying the shooter because she was afraid.  ECF No. 12-1 at p. 325.  In closing, counsel repeated that J.W. was "scared for her life because she knows what could happen to her if [Washington and the third man] know that she blamed them." ECF No. 12-1 at p. 611.

In short, the Court agrees with the state courts' determination that counsel's theory

15

was consistent and his performance was reasonable and competent.  Petitioner's claim of

ineffectiveness on this issue is unavailing.

## <u>CONCLUSION</u>

The Court concludes that Petitioner is not entitled to federal habeas relief.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Giordanio Blackburn for a writ

of habeas corpus relief is **DENIED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G.  FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September 2020.

16